No. 2013-1199

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

PACIFIC COAST MARINE WINDSHIELDS LIMITED,

Plaintiff-Appellant,

v.

MALIBU BOATS, LLC and TRESSMARK, INC.,
doing business as Liquid Sports Marine,

Defendants-Appellees,

and

MARINE HARDWARE, INC., MH WINDOWS, LLC, and JOHN F. PUGH,

Defendants-Appellees.

_____

Appeal from the United States District Court for the Middle District of Florida in
No. 12-cv-0033, Judge John Antoon II.

_____

## BRIEF OF DEFENDANTS-APPELLEES

_____

DARIN W. SNYDER
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8700

BRIAN BERLINER
STEVEN BASILEO
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
(213) 430-6000

JONATHAN D. HACKER
  *Counsel of Record*
LOREN L. ALIKHAN
DEANNA M. RICE
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300

*Counsel for Appellees Malibu Boats, LLC and Tressmark, Inc.*

[Additional counsel listed on inside cover]

MARK P. WALTERS
DARIO A. MACHLEIDT
Frommer Lawrence & Haug, LLP
1191 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 336-5690

*Counsel for Appellees Marine Hardware, Inc., MH Windows, LLC, and John F. Pugh*

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____ v. _____

No. _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
_____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

_____
_____
_____

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____
_____
_____

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____
_____
_____

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

_____
_____

_____06/24/2013_____               _____/s/ Jonathan D. Hacker_____
Date                                Signature of counsel

                                    _____Jonathan D. Hacker_____
                                    Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Pacific Coast Marine _____ v. Malibu Boats, LLC _____

No. 2013-1199 _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Appellees _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

   Marine Hardware, Inc.

   MH Window, LLC

   John F. Pugh

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   None

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   N/A

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: Frommer Lawrence & Haug (Mark P. Walters; Dario A. Machleidt); Genovese Joblove & Battista (Martin J. Keane; W. Barry Blum)

2-25-2013 _____                /s/ Mark P. Walters _____
       Date                                    Signature of counsel
                                         Mark P. Walters _____
                                            Printed name of counsel

Please Note: All questions must be answered
cc: _____

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ...................................................1

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF ISSUES ..................................................................1

STATEMENT OF THE CASE.............................................................1

STATEMENT OF THE FACTS ...........................................................2

      A.    The '070 Patent And The Accused Design...............................2

      B.    Defendants' Motion For Partial Summary Judgment...............5

SUMMARY OF ARGUMENT ............................................................8

STANDARD OF REVIEW .................................................................9

ARGUMENT ....................................................................................10

    I.    THE DISTRICT COURT CORRECTLY HELD THAT
        PROSECUTION HISTORY ESTOPPEL APPLIES TO
        DESIGN PATENTS..................................................................10

      A.    A Patentee Who Surrenders Subject Matter To Obtain A
          Design Patent May Not Later Recover It Through A
          Claim Of Infringement.............................................................10

      B.    PCMW's Contrary Arguments Lack Merit .............................18

    II.    PCMW'S CLAIM OF INFRINGEMENT IS BARRED BY
        BACH'S NARROWING AMENDMENT .......................................20

      A.    Bach's Narrowing Amendment Satisfies The Three-Part
          Test For Prosecution History Estoppel ....................................21

      B.    PCMW's Argument About The District Court's
          Supposed Inadequate Comparisons Is Irrelevant And
          Wrong.......................................................................................32

    III.    DEFENDANTS DID NOT WAIVE THEIR PROSECUTION
        HISTORY ESTOPPEL ARGUMENT .............................................34

      A.    Prosecution History Estoppel Is Not An Affirmative
          Defense That Must Be Pleaded In A Defendant's Answer .....35

i

# TABLE OF CONTENTS
(continued)

**Page**

B. Even If Prosecution History Estoppel Were An Affirmative Defense, It Was Properly Preserved, And The District Court's Grant Of Summary Judgment Was Proper ........................................................................39

CONCLUSION ...................................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*,
    No. 96-0942, 1996 WL 467273 (N.D. Cal. July 24, 1996) ...............................36

*Alpex Computer Corp. v. Nintendo Co.*,
    102 F.3d 1214 (Fed. Cir. 1996) ........................................................................17

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................10

*Astrazeneca UK Ltd. v. Dr. Reddy's Labs. Ltd.*,
    No. 08-3237, 2010 WL 4721384 (D.N.J. Nov. 15, 2010)..................................35

*Australia Vision Services Pty. Ltd. v. Dioptics Medical Products, Inc.*,
    29 F. Supp. 2d 1152 (C.D. Cal. 1998) .........................................................16, 24

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994) ...........................................................................38

*Biolumix, Inc. v. Centrus Int'l, Inc.*,
    No. 08-11418, 2012 WL 6015896 (E.D. Mich. Dec. 3, 2012)...........................35

*Bradford Co. v. Jefferson Smurfit Corp.*,
    No. 2000-1511, 2001 WL 35738792 (Fed. Cir. Oct. 31, 2001) .........................38

*Caldera v. Northrop Worldwide Aircraft Servs., Inc.*,
    192 F.3d 962 (Fed. Cir. 1999) ...........................................................................39

*Carman Industries, Inc. v. Wahl*,
    724 F.2d 932 (Fed. Cir. 1983) ......................................................35, 36, 37, 40

*Conmed Corp. v. Ludlow Corp.*,
    235 F. Supp. 2d 109 (N.D.N.Y. 2002)..........................................................27, 32

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
    282 F.3d 1370 (Fed. Cir. 2002) .........................................................................33

*Crocs, Inc. v. Int'l Trade Comm'n*,
    598 F.3d 1294 (Fed. Cir. 2010) ....................................................................22, 34

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Deep9 Corp. v. Barnes & Noble, Inc.*,
    772 F. Supp. 2d 1349 (W.D. Wash. 2011) ........................................................35

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) (en banc) ....................................................11, 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    344 F.3d 1359 (Fed. Cir. 2003) (en banc) .........................................................21

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    535 U.S. 722 (2002)...................................................................................passim

*Goodyear Dental Vulcanite Co. v. Davis*,
    102 U.S. 222 (1880).........................................................................................25

*Gorham Co. v. White*,
    81 U.S. (14 Wall.) 511 (1871) .............................................................11, 12, 13

*Grant v. Preferred Research, Inc.*,
    885 F.2d 795 (11th Cir. 1989) ....................................................................39, 44

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950).........................................................................................12

*Grober v. Mako Prods., Inc.*,
    686 F.3d 1335 (Fed. Cir. 2012) .......................................................................31

*Hassan v. U. S. Postal Serv.*,
    842 F.2d 260 (11th Cir. 1988) ....................................................................39, 44

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000) .............................................................19, 20, 31

*Hoganas AB v. Dresser Indus., Inc.*,
    9 F.3d 948 (Fed. Cir. 1993) .............................................................................40

*Hupp v. Siroflex of Am., Inc.*,
    122 F.3d 1456 (Fed. Cir. 1997) .................................................................10, 11

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Mann*,
  861 F.2d 1581 (Fed. Cir. 1988) ........................................................22

*In re Owens*,
  710 F.3d 1362 (Fed. Cir. 2013) ...............................................22, 34

*In re Rosuvastatin Calcium Patent Litig.*,
  703 F.3d 511 (Fed. Cir. 2012) ........................................................15

*In re Rubenfield*,
  270 F.2d 391 (C.C.P.A. 1959) ...............................................24, 33

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
  988 F.2d 1117 (Fed. Cir. 1993) ........................................................10

*Lee v. Dayton-Hudson Corp.*,
  838 F.2d 1186 (Fed. Cir. 1988) ...............................................11, 12

*Litton Sys., Inc. v. Whirlpool Corp.*,
  728 F.2d 1423 (Fed. Cir. 1984) ...............................................10, 11

*Loral Fairchild Corp. v. Sony Corp.*,
  181 F.3d 1313 (Fed. Cir. 1999) ........................................................15

*MarcTec, LLC v. Johnson & Johnson*,
  394 F. App'x 685 (Fed. Cir. 2010) ..................................................37

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996) ...............................................20, 31

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
  474 F.3d 1323 (Fed. Cir. 2007) ........................................................17

*McGrady v. Aspenglas Corp.*,
  487 F. Supp. 859 (S.D.N.Y. 1980) ..................................................16

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.*,
  93 F. App'x 214 (Fed. Cir. 2004) ...............................................12, 13

v

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*MobileMedia Ideas, LLC v. Apple, Inc.*,
No. 10-258, 2012 WL 6044777 (D. Del. Nov. 8, 2012) ....................................35

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
522 F.3d 1211 (11th Cir. 2008) ...........................................................................43

*Network Caching Technology, LLC v. Novell, Inc.*,
No. 01-2079, 2001 U.S. Dist. LEXIS 26211 (N.D. Cal. Dec. 31,
2001) ...................................................................................................................35

*Panduit Corp. v. All States Plastic Mfg. Co.*,
744 F.2d 1564 (Fed. Cir. 1984) ...........................................................................38

*PB Farradyne, Inc. v. Peterson*,
No. 05-03447, 2006 WL 132182 (N.D. Cal. Jan. 17, 2006) ...............................35

*Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*,
684 F.3d 1211 (11th Cir. 2012) .....................................................................39, 44

*Pioneer Magnetics, Inc. v. Micro Linear Corp.*,
330 F.3d 1352 (Fed. Cir. 2003) ...........................................................................21

*Proctor v. Fluor Enters., Inc.*,
494 F.3d 1337 (11th Cir. 2007) ...........................................................................10

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
324 F.3d 1346 (Fed. Cir. 2003) .....................................................................37, 38

*Santiago v. United States*,
107 Fed. Cl. 154 (Fed. Cl. 2012) .........................................................................39

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ...........................................................................43

*Sosa v. Airprint Systems, Inc.*,
133 F.3d 1417 (11th Cir. 1998) ...........................................................................43

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
620 F.3d 1305 (Fed. Cir. 2010) .......................................................................9, 37

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Stimulant Prods., Inc. v. Vibrex Corp.*,
   No. 68-584-JWC, 1969 U.S. Dist. LEXIS 9811 (C.D. Cal. Apr. 7,
   1969) ......................................................................................17, 24

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
   411 F.3d 1369 (Fed. Cir. 2005) ...................................................10, 37

*Victus Ltd. v. Collezione Europa U.S.A., Inc.*,
   No. 97-00138, 1998 U.S. Dist. LEXIS 14230 (M.D.N.C. Aug. 3,
   1998) ........................................................................20, 26, 28, 31

*Voda v. Cordis Corp.*,
   536 F.3d 1311 (Fed. Cir. 2008) ..........................................................28

*W.R. Grace & Co. v. Western U.S. Indus., Inc.*,
   No. 74-2088-R-2089-R, 1975 U.S. Dist. LEXIS 12301 (C.D. Cal.
   May 16, 1975)........................................................................16, 24

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*,
   103 F.3d 1571 (Fed. Cir. 1997) .............................................8, 14, 21

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997)........................................................................14, 15

*Yeu v. Kim*,
   No. 90-1070, 1990 WL 56140 (Fed. Cir. May 3, 1990)..................35, 36, 37, 40

**STATUTES**

28 U.S.C. § 1291 ..............................................................................1

29 U.S.C. § 1295 ..............................................................................1

35 U.S.C. § 171 ...............................................................................23

35 U.S.C. § 286 ...............................................................................38

35 U.S.C. § 289 ...........................................................................11, 20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**OTHER AUTHORITIES**

Chisum on Patents § 23.05......................................................................13, 15

MPEP § 1502.01(D)..............................................................................24, 27

MPEP § 1504.05 ...................................................................................23, 26

**RULES**

Fed. R. Civ. P. 8 ...............................................................................6, 36, 38

Fed. R. Civ. P. 16 .....................................................................................43

Fed. R. Civ. P. 56(a)...................................................................................9

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for appellees certifies that no other appeal in or from the same civil action in the lower court was previously before this or any other appellate court.  Counsel further certifies that there is no other case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

Appellant's jurisdictional statement is complete and correct.  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. §§ 1291 and 1295.

## STATEMENT OF ISSUES

Whether the district court properly granted Defendants' Consolidated Motion for Partial Summary Judgment with respect to non-infringement of the '070 Patent.

## STATEMENT OF THE CASE

In this dispute, plaintiff-appellant Pacific Coast Marine Windshields Limited ("PCMW") alleges that a marine windshield manufactured and distributed by defendants infringes a design patent (the "'070 Patent") obtained by PCMW's owner and chief executive officer, Darren Bach.  The district court rejected that claim on summary judgment.  The court held that the accused windshield falls

within territory relinquished to the public by amendments Bach made to the claimed design to obtain the patent.  PCMW appealed.

## STATEMENT OF THE FACTS

PCMW's recitation of the facts in its opening brief provides a skewed and misleading view of the events leading to this appeal, and it treats as established fact issues that are still in dispute and currently stayed in the district court pending resolution of this appeal.  The facts relevant to resolution of this appeal are as follows.

### A.    The '070 Patent And The Accused Design

In April 2006, Darren Bach, the owner and chief executive officer of PCMW, submitted the application that ultimately led to the '070 Patent.  JA 170. In that application, Bach included twelve different patent drawings purporting to reflect his design for a marine windshield.  JA 362-71.

The patent examiner evaluating Bach's application divided those twelve drawings into five groups, each of which she deemed a separate, "patentably distinct design[]." JA 386.  The design groups were:

(1)    a marine windshield with a hatch and four circular venting holes (Figures 1-6);

(2)    a marine windshield with no hatch and four circular or square venting holes (Figures 7 and 12);

(3)    a marine windshield with a hatch and no venting holes (Figure 8);

2

(4)    a marine windshield with no hatch and no venting holes (Figure 9); and

(5)    a marine windshield with a hatch and two oval or rectangular venting holes (Figures 10 and 11).

JA 386.  According to the examiner, the design groups were distinguished from each other by "[t]he presence/absence of the hatch and various venting holes."  JA 386.

The patent examiner required Bach to select which one of the five patentably distinct designs he wished to prosecute in his pending patent application.  JA 386. The examiner advised that if Bach wished to contest the restriction requirement, he would be required to show that the five groups did not represent distinct designs, which could potentially increase the chance that none of the drawings would be deemed sufficiently novel to secure a design patent.  JA 387.

Bach elected to prosecute only the first design group identified by the examiner—the design covering a windshield with a hatch and four circular venting holes.  JA 389-92.  He amended his patent application to delete the figures for the non-elected groups.  JA 390-91.  That amendment narrowed the twelve drawings originally submitted with the application to six drawings.  JA 390-91, 394.  Each one of the remaining six drawings depicted a marine windshield with a hatch and four circular venting holes.  JA 362-65, 390.  The '070 Patent issued with only those six figures.  JA 170-74.



[the patented design]

Bach made no attempt to challenge the patent examiner's conclusion that the designs embodied in the other drawings submitted with the initial application were patentably distinct from the design covered by the '070 Patent. *See* JA 394. Indeed, accepting the patent examiner's conclusion that the designs were patentably distinct, Bach in October 2007 filed a divisional patent application for a windshield design with a hatch and no venting holes in the corner posts, which was the third design group identified by the '070 Patent examiner. JA 966-70; *see* JA 386. The divisional application was otherwise identical to the '070 Patent design. The divisional patent issued on May 27, 2008. JA 966.



[the divisional patent design]

4

This case concerns the abandoned fifth design group described by the patent examiner. The abandoned fifth design group differs from the '070 Patent in the number, size, and shape of the venting holes in the corner posts. Whereas the patented design includes four circular venting holes, the abandoned design included two larger oval or rectangular venting holes. *See* JA 386.



[abandoned 2-hole vent design]

Like the abandoned fifth design group, the windshield that allegedly infringes the '070 Patent ("the accused windshield") also differs from the '070 Patent design, *inter alia*, in the number (three rather than four), size (larger), and shape (rectangular rather than circular) of its venting holes:



[the accused design]

## B.    Defendants' Motion For Partial Summary Judgment

Defendants moved for summary judgment on the issue of non-infringement of the '070 Patent. Defendants argued, *inter alia*, that Bach's abandonment of the

fifth design limited the scope of the '070 Patent to exclude that design and thus barred PCMW from claiming infringement.  JA 285-89.  In response, PCMW argued that this "prosecution history estoppel" argument was waived because defendants did not adequately plead it as an express affirmative defense in their answers.  JA 477-79.  PCMW also argued that the examiner's restriction requirement—which caused Bach to amend the '070 Patent application and abandon the fifth design—could not give rise to prosecution history estoppel because it was "administrative" and "does not relate to patentability."  JA 479-80.  Finally, PCMW argued that Bach could not have surrendered the accused design through his amendment, because no three-venting-hole design was before the patent examiner.  JA 481-82.

The district court granted defendants' motion, holding that Bach's abandonment of the fifth design group barred PCMW from asserting infringement of the '070 Patent by the accused design.  JA 12.  The court rejected PCMW's waiver argument.  The court held that so long as a defendant adequately asserts an affirmative defense by some means other than its Rule 8 pleading—as defendants did here—the plaintiff is not prejudiced, and absent such prejudice the court is free to consider the issue.  JA 5 n.2.  The court also noted that PCMW had not shown that it suffered any prejudice as a result of any delay by defendants in raising the prosecution history estoppel defense.  JA 5 n.2.

On the merits of the issue, the district court reviewed the prosecution history set forth above, *supra* at 2-5, and held that Bach had "narrowed the scope of the design in response to a restriction requirement."  JA 7.  The court rejected PCMW's argument that the restriction requirement was merely "administrative," explaining that the cases cited by PCMW to support that proposition involved utility patents, rather than design patents, and that restriction is mandatory in the design-patent context.  JA 8-9.  To "comply with the requirement that design patents may not contain more than one inventive concept," the court explained, Bach had "narrowed the scope of the claimed design in order to obtain the patent." JA 9.  Comparing the patented design and the cancelled embodiments to the accused design, the court determined that "the accused design is still clearly within the territory between the original claim and the amended claim," i.e., it was outside the amended claim.  JA 12 (internal quotation marks omitted).  Because PCMW had not overcome the presumption that by abandoning the fifth design it had also surrendered the accused design, the court concluded that PCMW's claim of infringement was barred.  JA 11-12.

PCMW moved for reconsideration of that decision, focusing on its argument that defendants had waived prosecution history estoppel.  *See* JA 604-16.  The district court denied the motion.  JA 900.  PCMW appealed.

## SUMMARY OF ARGUMENT

The district court correctly granted defendants summary judgment of non-infringement because PCMW abandoned the accused subject matter in prosecuting the '070 Patent. When a patentee surrenders subject matter for purposes of securing a patent, he may not subsequently attempt to reclaim that subject matter through a claim for infringement. This basic principle has been widely espoused in the utility-patent context, where courts have frequently recognized the concept of "prosecution history estoppel" or "file wrapper estoppel," which "preclud[es] a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 734 (2002) (quoting *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1577-78 (Fed. Cir. 1997)). The principle applies with equal force to design patents. The test for infringement of a design patent asks whether an "ordinary observer" might be deceived into mistaking the accused product for the patented design. In this way, it necessarily encompasses a range of similar-looking designs, or equivalents. When, however, the patentee has expressly disavowed one of those equivalents by surrendering it to obtain the patent in the first place, the patentee cannot later reclaim the surrendered matter through a claim for infringement.

The district court, after reviewing the '070 Patent's prosecution history and comparing the patented, accused, and surrendered designs, concluded that PCMW was barred from claiming that defendants infringed the '070 Patent. For the reasons explained below, that holding is correct. Contrary to PCMW's submission, a patentee cannot cancel subject matter out of a design-patent application to obtain the patent and then later claim that the issued patent covers the surrendered claim scope. That approach would be at odds with the public notice function that this Court has long recognized patents serve. Defendants also did not waive prosecution history estoppel. Defendants raised the defense at numerous points throughout the litigation, and PCMW does not claim prejudice. This Court should reject PCMW's arguments and affirm the decision of the district court.

## STANDARD OF REVIEW

The district court's order granting defendants summary judgment on infringement of the '070 Patent is reviewed de novo. *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1312, 1315 (Fed. Cir. 2010). In conducting that review, this Court applies the same standard applied by the district court. *Id.* at 1312. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" when a

reasonable jury could return a verdict for the non-moving party based on the evidence in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is "material" when it could affect the outcome of the case under the governing law. *Id.*

Regional circuit law (here, the Eleventh Circuit) governs the question of waiver of a defense. *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005). The Eleventh Circuit reviews a district court's ruling on waiver of an affirmative defense for abuse of discretion. *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350 n.9 (11th Cir. 2007). Under the abuse-of-discretion standard, a reviewing court "must affirm" unless it "find[s] that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* (internal quotation marks omitted).

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY HELD THAT PROSECUTION HISTORY ESTOPPEL APPLIES TO DESIGN PATENTS

### A.    A Patentee Who Surrenders Subject Matter To Obtain A Design Patent May Not Later Recover It Through A Claim Of Infringement

1. "To infringe a design patent the accused article must appropriate the features of the patented design and its overall appearance." *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1464 (Fed. Cir. 1997) (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed. Cir. 1993); *Litton Sys., Inc. v.*

10

*Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)).  To establish

infringement, a plaintiff must show that "an ordinary observer, familiar with the

prior art, would be deceived into thinking that the accused design was the same as

the patented design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672

(Fed. Cir. 2008) (en banc); *see Hupp*, 122 F.3d at 1464 ("Infringement is

determined from the viewpoint of the ordinary observer, whereby the observer

would be led to believe that the article of one producer is that of another because of

their similarity in design.").  This standard is derived from the Supreme Court's

original formulation in *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511 (1871):  "[I]f,

in the eye of an ordinary observer, giving such attention as a purchaser usually

gives, two designs are substantially the same, if the resemblance is such as to

deceive such an observer, inducing him to purchase one supposing it to be the

other, the first one patented is infringed by the other." *Id.* at 528.

    Infringement under *Gorham*'s "ordinary observer" test is not about whether

the accused product is literally identical to the claimed design, but whether the

"'two designs are *substantially* the same.'" *Lee v. Dayton-Hudson Corp.*, 838 F.2d

1186, 1189 (Fed. Cir. 1988) (quoting *Gorham*, 81 U.S. (14 Wall.) at 528)).  The

design-patent statute reflects the same principle, defining an infringing design to

include "the patented design, *or any colorable imitation thereof*."  35 U.S.C. § 289

(emphasis added); *see Egyptian Goddess*, 543 F.3d at 678 ("[I]nfringement will not

be found unless the accused article embod[ies] the patented design or any colorable imitation thereof." (second alteration in original) (internal quotation marks omitted)).

Because the *Gorham* design-patent-infringement standard necessarily encompasses designs that are not identical to the design claimed in the patent—i.e., "substantially similar" designs—that standard "by its nature subsumes a doctrine of equivalents analysis." *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 F. App'x 214, 217 (Fed. Cir. 2004). It accordingly "has long been recognized that the principles of equivalency are applicable under *Gorham*." *Lee*, 838 F.2d at 1189-90; *see Egyptian Goddess*, 543 F.3d at 678.

PCMW errs in contending that there are distinct tests for "literal infringement" and equivalents infringement in the design-patent context. That distinction exists for infringement of utility patents, *see Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607-08 (1950), but not for design-patent infringement, which "by its nature" incorporates equivalency into its basic standard, *Minka*, 93 F. App'x at 217; *see supra* at 11-12.[1] For a design patent,

---

[1] PCMW's brief takes issue with *Lee*'s and *Minka*'s holdings that the ordinary-observer test for design-patent infringement effectively incorporates the doctrine of equivalents. Br. 23-25. But the substance of PCMW's criticism consists only of reciting an assortment of broader principles that those cases do not stand for. Fundamentally, PCMW does not dispute that *Lee* and *Minka* explain that *Gorham*'s design-patent-infringement test incorporates an equivalence

12

there is simply a claim for "infringement," which compels a singular inquiry into whether the accused design is "substantially similar" enough to the claimed design that an "ordinary observer" would consider them the same.    As the Chisum treatise explains:

> Given the mode of claiming with design patents, that is, a claim that merely refers to the drawing(s) illustrating the design, and given the *Gorham* standard for determining infringement, that is, substantial similarity to an ordinary observer of the claimed and accused designs … and excluding similarity due to common functional features, it can be questioned whether there is any need to apply to designs the general distinction between "literal" infringement of a patent and infringement under the "doctrine of equivalents."

1-23 Chisum on Patents § 23.05.[2]

2.    Whether consideration of equivalents arises under the "ordinary observer" test of "substantial similarity" in the design-patent context or under the formal "doctrine of equivalents" in the utility-patent context, there must be clear boundaries on the range of equivalents that can be claimed.    Otherwise, "[i]t may be difficult to determine what is, or is not, an equivalent to a particular element of

---

component.  In fact, PCMW agrees that in *Minka* "[t]his Court stated that the *Gorham* test … subsumes a doctrine of equivalents analysis."  Br. 24.  That is precisely the proposition that the district court extracted from the cases.

[2] PCMW itself concedes that its own conception of "literal" design-patent infringement encompasses some range of equivalents.  According to PCMW, *Gorham*'s "ordinary observer" test arose from the Court's recognition that "differences can always be found between an accused article and a patented design."  Br. 21 (citing *Gorham*, 81 U.S. (14 Wall.) at 527).  Those "differences" represent the equivalents inherent in the test.

an invention," and, "[i]f competitors cannot be certain about a patent's extent, they may be deterred from engaging in legitimate manufactures outside its limits, or they may invest by mistake in competing products that the patent secures." *Festo*, 535 U.S. at 732.

One important constraint on the range of equivalents is "prosecution history estoppel," also known as "file wrapper estoppel." "Prosecution history estoppel acts as one check on application of the doctrine of equivalents by precluding a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent." *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1577-78 (Fed. Cir. 1997) (internal citation omitted). An "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo*, 535 U.S. at 736. The Supreme Court has advised that "a narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel." *Id.* "A patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter." *Id.* at 737.

The logic underlying prosecution history estoppel applies no less where a patentee has narrowed his claim to obtain a design patent than it does in the utility-patent context. Both types of patents define the patentee's claim and provide notice of that claim to the public. *See Warner-Jenkinson Co. v. Hilton Davis*

14

*Chem. Co.*, 520 U.S. 17, 33 (1997) ("[Patent] claims do indeed serve both a definitional and a notice function."); *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 536-37 (Fed. Cir. 2012) ("The claims of a validly-issued patent serve an important notice function, alerting the public of the metes and bounds of an inventor's discovery.").  Prosecution history estoppel protects the public's ability to rely on the notice provided by a patent by preventing a patentee from narrowing the scope of his claim during the prosecution process and then later attempting to recapture the surrendered ground when making a claim of infringement.  *See In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d at 537 ("[Patents'] public notice function will be subverted if … patentees are given free rei[]n to rewrite their claims whenever they find it expedient to do so.").  The doctrine embodies the basic, common-sense notion that, where a patentee has publicly surrendered claim scope to obtain a patent, the surrendered subject matter is not protected by that patent and is therefore available to the public.  *See Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1322 (Fed. Cir. 1999) ("The touchstone of prosecution history estoppel is that a patentee is unable to reclaim through the doctrine of equivalents what was surrendered or disclaimed in order to obtain the patent.").

Courts have readily recognized that narrowing amendments made during the prosecution of a design patent will limit the scope of the patented design to exclude the surrendered designs or design elements.  *See* 1-23 Chisum on Patents § 23.05

("Decisions confirm that a design patent's prosecution history may limit its scope."). For example, in *Australia Vision Services Pty. Ltd. v. Dioptics Medical Products, Inc.*, 29 F. Supp. 2d 1152 (C.D. Cal. 1998), the trial court concluded that the patent holder had limited the scope of its design patent by narrowing it to exclude a design similar to the accused subject matter. If that rule did not apply to design patents, the court explained, "then a design patentee would be able to draft claims narrowly during prosecution to avoid invalidity then broaden the claims during litigation to encompass rejected limitations." *Id.* at 1158. That result, the court concluded, "would be contrary to established patent principles of claim interpretation and notice." *Id.* And even though prosecution history estoppel or similar concepts are most frequently applied in considering a utility patent's scope under the doctrine of equivalents, the court observed that "the doctrine of equivalents and design infringement employ essentially the same test," and it "seems logical that if prosecution history can be applied as a defense to infringement under the doctrine of equivalents then it should also be applicable as a defense to design infringement." *Id.* at 1157 n.5. Other decisions have applied the same straightforward logic, limiting design patents in accordance with narrowing amendments made during the prosecution history. *See McGrady v. Aspenglas Corp.*, 487 F. Supp. 859, 861 (S.D.N.Y. 1980); *W.R. Grace & Co. v. Western U.S. Indus., Inc.*, No. 74-2088-R-2089-R, 1975 U.S. Dist. LEXIS 12301,

at *23-24 (C.D. Cal. May 16, 1975); *Stimulant Prods., Inc. v. Vibrex Corp.*, No. 68-584-JWC, 1969 U.S. Dist. LEXIS 9811, at *13-14 (C.D. Cal. Apr. 7, 1969) (granting summary judgment on ground that file wrapper estoppel barred claim of infringement on design patent).

The precise terminology, of course, is beside the point. Whether it is described as "prosecution history estoppel," or "file wrapper estoppel," or in some other lawyerly terms, the substantive principle is inescapable: a patentee who amends a patent application to obtain a patent cannot be allowed to reassert the original application through the guise of an equivalents-type argument in a subsequent infringement action. That underlying concept runs through numerous patent-law doctrines, from "prosecution history estoppel" to "prosecution disclaimer" to the "recapture rule" to "abandonment." What this Court said about the recapture rule could be said about any of these doctrines: the rule "serves the same policy as does the doctrine of prosecution history estoppel," because "both operate, albeit in different ways, to prevent a patentee from encroaching back into territory that had previously been committed to the public." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1332 (Fed. Cir. 2007); *see Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1221-22 (Fed. Cir. 1996) (noting the relation between the doctrines of prosecution history estoppel and prosecution disclaimer). The district court here used the "prosecution history estoppel" label,

which is as sensible as any other.  But what matters is the substantive point:  a patentee cannot reclaim for himself subject matter he committed to the public to win legal protection for his invention.

### B.    PCMW's Contrary Arguments Lack Merit

PCMW proffers several reasons that no doctrine like prosecution history estoppel should apply in the design-patent context.  None has merit.

1.  PCMW's principal argument is that prosecution history estoppel, as it operates in the utility-patent context, functions only as an answer to the formal doctrine of equivalents and does not apply to claims of "literal" infringement.  Br. 18-19.  As explained above, however, in the *design*-patent context, there is no substantive distinction between a claim of "literal" infringement and an equivalents-type claim.  All design-patent claims raise the singular question whether the accused device looks "substantially similar" to the patented design. *See supra* at 10-13.  This case demonstrates the speciousness of the distinction. PCMW describes its claim as one of "literal" infringement, but such a claim would be frivolous on its face:  the accused device is *literally different* from the patented design in the number, shape, and size of its venting holes.  If PCMW's claim is actually one for "literal" infringement, then defendants prevail outright, without any need to refer to the prosecution history.  In fact, PCMW does not contend that the accused device looks *identical* to the patented design.  It instead contends that

18

the accused device looks *similar enough* that it should be deemed infringing.

PCMW's own claim, in short, demonstrates that allegations of design-patent

infringement include certain equivalents and that prosecution history estoppel or

similar doctrines must and do apply to limit design-patent scope.

    2.  PCMW also contends that applying prosecution history estoppel to

design patents "would serve no purpose," because the doctrine applies "most

frequently in instances of claim scope surrendered to avoid prior art," and

"[a]mendments to avoid prior art are not a concern with design patents."  Br. 22.

The Supreme Court rejected a version of the same argument in *Festo* (which

PCMW cites on this point), explaining that although "estoppel has been discussed

most often in the context of amendments made to avoid the prior art," it "does not

follow… that amendments for other purposes will not give rise to estoppel."  535

U.S. at 735-36.  In fact, "a narrowing amendment made to satisfy *any* requirement

of the Patent Act may give rise to an estoppel."  *Id.* at 736 (emphasis added).  It is

thus irrelevant that design-patent prosecution does not involve amendments made

to avoid prior art.  What matters is that design-patent prosecution *does* involve

amendments made to obtain a patent, as this case illustrates.  And when a design-

patent amendment relinquishes subject matter to the public, barring the patentee

from recovering that subject matter through an infringement action advances the

doctrine's core purpose of protecting the public's right to notice.  *See Hockerson-*

*Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000);

*Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106 (Fed. Cir. 1996); *Victus Ltd. v.*

*Collezione Europa U.S.A., Inc.*, No. 97-00138, 1998 U.S. Dist. LEXIS 14230, at

*19 (M.D.N.C. Aug. 3, 1998).

     3.  PCMW protests that recognizing prosecution history estoppel in this case

would represent a "sweeping change," Br. 21, that should remain with Congress,

Br. 20.  But Congress has already made the decision to define infringement for a

design patent to include a "colorable imitation thereof."  35 U.S.C. § 289.  And

courts and commentators have long recognized that prosecution history estoppel

*can* apply to bar design-patent-infringement claims in appropriate circumstances.

*See supra* at 14-17.  Congressional intent and judicial practice are entirely in

harmony on this question.  PCMW, not defendants, seeks to upset that long-

standing balance.

## II.    PCMW'S CLAIM OF INFRINGEMENT IS BARRED BY BACH'S NARROWING AMENDMENT

     As the prior section explained, prosecution history estoppel applies in the

context of design patents.  The only remaining question is whether the district

court properly applied the doctrine to this case.  It did.  The court correctly

recognized that Bach surrendered the accused design when he amended the '070

Patent application to obtain the patent.  PCMW cannot now "regain[], through

litigation, coverage of subject matter relinquished during prosecution of the application for the patent." *Wang Labs.*, 103 F.3d at 1577-78.

## A.    Bach's Narrowing Amendment Satisfies The Three-Part Test For Prosecution History Estoppel

This Court has set forth a three-step process for determining whether a patent holder has meaningfully narrowed the scope of his patent through amendment, precluding an infringement claim based on the excluded elements. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (en banc). The first question is whether there was an amendment that "narrowed the literal scope of a claim." *Id.* (citing *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003)). If so, the next question is "whether the reason for that amendment was a substantial one relating to patentability." *Id.* If the amendment was not for "a reason of patentability," the amendment does not create a limitation on the patent. *Id.* at 1367. But if the amendment was made to obtain the patent, the final inquiry is to identify "the scope of the subject matter surrendered by the narrowing amendment." *Id.* A patentee is presumed to have surrendered "all territory between the original claim limitation and the amended claim limitation," though he "may rebut that presumption of total surrender" as to particular equivalents. *Id.* (citing *Festo*, 535 U.S. at 740).

The foregoing framework makes clear that the '070 Patent was substantively

limited by Bach's amendment, which abandoned a design that encompasses the accused design, thereby precluding PCMW's challenge to that design.

1.  There can be no serious dispute that Bach's amendment to the '070 Patent application narrowed the literal scope of its claim.  The scope of a design-patent claim is defined by what is shown in the patent drawings.  *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) ("Design patents are typically claimed as shown in drawings."); *accord In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013) ("In the context of design patents, the drawings provide the written description of the invention."); *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) (design patent "limited to what is shown in the application drawings").  It follows that a patentee reduces the literal scope of his claim when he removes drawings that differ from the drawings that remain a part of the patent application.

PCMW thus errs in asserting that it is simply "not clear in the context of an application for a design patent when an amendment actually 'narrows' a claim."  Br. 21-22.  In fact, in the design-patent context, a narrowing amendment is easily identified.  In a design patent, the drawings *are* the claim.  Accordingly, when a patentee eliminates drawings depicting a *different* design, he has necessarily cancelled that material out of the application.

Here, Bach's initial application contained twelve different drawings.  JA 360-71.  The patent examiner responded that the application (and its drawings)

disclosed different embodiments.  In particular, the "presence/absence of the hatch and various venting holes create[d] five patentably distinct designs."  JA 386.   In response to the patent examiner's warning that pursuing all five designs could jeopardize the patent claim, *see* JA 387, Bach narrowed the application to six drawings, JA 389-92.  Nothing more is required to find that the claim was narrowed.

2.  Bach's amendment to the '070 Patent application was made for a reason of "patentability," because it was "made to secure the patent."  *Festo*, 535 U.S. at 736.  Bach narrowed the scope of the design claimed in his application in direct response to a restriction requirement issued by the patent examiner.  JA 386-87, 389-92.  As explained above, Bach's initial application included twelve different drawings that he asserted embodied his design, JA 360-71, but the patent examiner concluded that those drawings depicted five patentably distinct designs, JA 386.  The patent examiner required Bach to select one design for prosecution under the '070 Patent application.  JA 386-87.  In response, Bach elected the first of the design groups identified by the examiner, JA 389-92, and the '070 Patent issued with only the drawings in that group, JA 170-74.

That amendment was necessary to secure the '070 Patent because a design patent, unlike a utility patent, is *per se* limited to a single invention.  *See* 35 U.S.C. § 171 (using "design" in the singular); *see also* MPEP § 1504.05 ("Unlike a utility

patent application, which can contain plural claims directed to plural inventions, a

design patent application may only have a single claim.").  While restriction is

discretionary in utility-patent applications, it is *mandatory* in design-patent

applications.  MPEP § 1502.01(D); *see also In re Rubenfield*, 270 F.2d 391, 396

(C.C.P.A. 1959).  Accordingly, when a patentee submits a design-patent

application spanning multiple distinct designs, the patent examiner must issue a

restriction requirement limiting the application to a single inventive concept.  A

patentee *cannot* obtain a design patent that covers more than one distinct design,

and if the patentee submits an application that includes multiple distinct designs, he

*must* narrow his claim by eliminating some of the previously claimed material.  In

short, an amendment narrowing a claim in response to a restriction requirement

necessarily relates to "patentability" in the design-patent context because failure to

make such a change—i.e., to limit the application to a single patentable design—

will prevent the patentee from obtaining the patent sought.  On that basis, courts

have held that when a patentee cancels material from his application during the

prosecution of a design patent, he cannot resurrect the designs represented in those

drawings when claiming infringement.  *See Australia Vision Servs. Pty.*, 29 F.

Supp. 2d at 1158-59; *W.R. Grace & Co.*, 1975 U.S. Dist. LEXIS 12301, at *23-24;

*Stimulant Prods.,*1969 U.S. Dist. LEXIS 9811, at *13-14.

　　　　To be sure, PCMW had options.  It could have challenged the patent

examiner's determination, arguing that the restriction requirement was improper or that the different designs were not distinct. *See* JA 387. Alternatively, PCMW could have simply submitted a divisional patent application that covered a marine windshield with a hatch and rectangular holes—as it did for another design that was rejected by the patent examiner (a marine windshield with a hatch and no venting holes). *See* JA 966-70. But PCMW neither challenged the patent examiner's finding nor filed a divisional application for the other canceled embodiments. And when "the patentee has the right to appeal, his decision to forgo an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim." *Festo*, 535 U.S. at 734 (citing *Goodyear Dental Vulcanite Co. v. Davis*, 102 U.S. 222, 228 (1880)).

PCMW suggests that the amendment was not made for a reason of patentability because the abandoned design groups themselves could have been "patentable subject matter," or at least there is "no evidence" suggesting otherwise. Br. 16; *see* Br. 25-30. That argument fundamentally misunderstands what a "reason of patentability" means in the prosecution history estoppel context. The relevant question is not whether, had PCMW chosen to do so, it could have obtained a series of separate design patents each covering one of the abandoned design groups. Whatever may be true of each of the five design groups encompassed in the initial '070 Patent application had they been submitted

*separately*, the one actual "claim" that Bach initially submitted with his application was not itself patentable, because the one claim included multiple distinct designs. *See* MPEP § 1504.05. Bach therefore narrowed his initial application, surrendering four of the five designs, *specifically to obtain the '070 Patent*. *See Festo*, 535 U.S. at 736 ("Estoppel arises when an amendment is made to secure the patent."). Indeed, the fact that Bach obtained a divisional patent for one of the abandoned design groups suggests that even he realized that he had surrendered design scope when he made his election and that he needed to secure additional patents to ensure protection for those designs. PCMW points out that there was nothing to prevent it from submitting additional applications for each of the non-elected design groups, but the simple fact is that PCMW did not do so for three of those groups. And even if it had, that would mean at most that the *new* patents might have covered the surrendered material. The '070 Patent—the only patent at issue in *this* case—still would not cover that material. *See Victus*, 1998 U.S. Dist. LEXIS 14230, at *19.

In a variation on its misguided "patentability" argument, PCMW insists that only amendments made in response to a rejection—not those made in response to a restriction requirement—can serve as a basis for applying prosecution history estoppel. Br. 25-29. But the Supreme Court has made clear that "a narrowing amendment made to satisfy *any requirement of the Patent Act* may give rise to an

estoppel." *Festo*, 535 U.S. at 736 (emphasis added); *see Conmed Corp. v. Ludlow Corp.*, 235 F. Supp. 2d 109, 122 (N.D.N.Y. 2002) ("Through restriction practice, [the inventor] essentially was required to narrow the scope of his application. Accordingly, estoppel applies to the restriction.").  And restrictions are particularly significant to a patent's prosecution history in the design context because, as described above, restriction is mandatory for design patents.  *See* MPEP § 1502.01(D).  The district court thus properly distinguished the utility-patent cases cited by PCMW because restriction does not play the same role in the patent prosecution process for utility patents (where restriction is discretionary) that it does for design patents (where restriction is mandatory).  *See id.*

3.  The designs surrendered by Bach to obtain the patent represent territory that encompasses the accused design.  "A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim."  *Festo*, 535 U.S. at 740.  In other words, by surrendering the other four designs, Bach is presumed to have disclaimed the "territory" encompassed by the surrendered designs.

It is true that a plaintiff can rebut the presumptive limitation that arises from a substantive narrowing amendment, but only if the plaintiff proves "(1) that the equivalent was unforeseeable at the time of the patent application; (2) that the rationale underlying the amendment bore 'no more than a tangential relation to the

equivalent in question'; or (3) 'some other reason suggesting that the patentee could not reasonably be expected to have described the [alleged equivalent] in question.'" *Voda v. Cordis Corp.*, 536 F.3d 1311, 1325 (Fed. Cir. 2008) (quoting *Festo*, 535 U.S. at 740-41).

PCMW appears to invoke the third criterion, asserting that it "would not be reasonable" to expect Bach or PCMW to have filed a separate divisional patent application for each of the abandoned design groups to preserve protection for them. Br. 31. Bach, however, *did* file a divisional patent application for one of the four forfeited design groups. JA 966-70. That application confirms his recognition that those designs were not encompassed by the '070 Patent's scope and that additional applications were required to ensure that they were protected. PCMW cannot explain why it was reasonable for Bach to seek protection for one of the forfeited design groups, but unreasonable to seek protection for the others. Where a patentee has submitted a drawing with his application and then withdraws it to obtain the patent—rather than taking appropriate steps to protect the design depicted in the drawing—the public is entitled to conclude that the withdrawn design is not covered by the patent awarded. *See Victus*, 1998 U.S. Dist. LEXIS 14230, at *19 ("[I]f Master Design had obtained a separate patent for the glass-top designs, Europa's tables might very well have infringed that patent. But in this case, where Master Design submitted and subsequently withdrew the glass-top

28

designs from its only patent, and where these actions were clearly a part of the public record, Europa was entitled to rely on Master Design's unambiguous surrender of these designs.").  This is all the more true when the patentee not only fails to protect the cancelled embodiment at issue, but *does* seek to protect a different one.

Further, the third prong in the *Festo* exception is not concerned with some general notion of "reasonableness," as PCMW appears to believe.  It asks a very specific question:  whether the patentee could "reasonably be expected to have described the [alleged equivalent] in question" in the patent application.  535 U.S. at 741.  The plaintiff must show, in other words, that it was not reasonable to expect the patentee to have described the particular equivalent in the patent application.  PCMW does not attempt to make that showing.

Nor could it.  Bach certainly could have been expected to include a design with a different number of venting holes with different shapes in the '070 Patent application—after all, the application *originally included such a design*.  *See* JA 369-70.  The patent examiner stated that the '070 Patent design and the abandoned fifth design group, with two rectangular or oval venting holes, were patentably distinct.  JA 386.  The only apparent differences between those two designs are the number, shape, and size of the venting holes.  *Compare* JA 362 *with* JA 369-70. By electing to proceed only with the first of those designs, Bach affirmed the

patent examiner's determination that the number, size, and shape of venting holes is significant to the windshield design as a whole and that a design that differed only in those respects from the patented design is patentably distinct from it. Bach therefore surrendered any claim that a design with a different number of venting holes, in different shapes and sizes, than are pictured in the '070 Patent drawings is protected by the '070 Patent.

The accused design has three rectangular venting holes. It differs from the patented design in the number, shape, and size of its venting holes, as did the abandoned fifth design group with two rectangular or oval venting holes. The original claim included a windshield with or without a hatch and having any of a variety of venting hole configurations, and the amended claim included only a windshield with a hatch and four small circular venting holes. JA 361-71, 390-91. As a result, the accused design falls into the "territory" surrendered by Bach's amendment, *Festo*, 535 U.S. at 740, precluding PCMW's infringement claim.[3]

---

[3] In a footnote, Br. 19 n.4, PCMW cites the district court's claim construction order, which declined to apply "prosecution disclaimer" to restrict the '070 Patent design to windshield designs with four venting holes. The claim construction order reasoned that "[e]ven if the election constituted an unequivocal disavowal of the unelected designs, it would not imply an unequivocal disavowal of all designs that do not have four vent holes." JA 602. That order has no bearing on the court's subsequent ruling that Bach's narrowing amendment precludes PCMW's infringement claim. The standard for prosecution disclaimer is considerably more stringent than that for amendment-based prosecution history estoppel, requiring an "unambiguous disavowal that clearly and unmistakably

\* \* \* \*

Applying prosecution history estoppel to bar PCMW's claim of infringement

honors the "basic foundation of prosecution history estoppel—public notice."

*Victus*, 1998 U.S. Dist. LEXIS 14230, at *19. A patent's prosecution history

"constitutes a public record of the patentee's representations concerning the scope

and meaning of the claims, and competitors are entitled to rely on those

representations when ascertaining the degree of lawful conduct, such as designing

around the claimed invention." *Hockerson-Halberstadt*, 222 F.3d at 957. By

acquiescing in the patent examiner's restriction requirement and then choosing not

to separately prosecute three of the four cancelled embodiments, Bach put the

public on notice that he had surrendered that claim scope. *See Maxwell*, 86 F.3d at

1106 ("[S]ubject matter disclosed but not claimed in a patent application is

dedicated to the public." (internal quotation marks omitted)); *cf. Victus*, 1998 U.S.

Dist. LEXIS 14230, at *19 (explaining that where a drawing was submitted with a

patent application and then withdrawn, public was entitled to rely on cancelled

drawing not being covered by the patent, and noting that the patentee could have

disclaims claim scope or meaning." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335,
1342 (Fed. Cir. 2012). Further, the claim construction order emphasized that "the
vent holes in the unelected designs differ not merely in number but also in shape
and relative size" from those in the '070 Patent drawings. JA 602. That logic is
consistent with the court's later decision that the amendment abandoned designs
that differed in all three dimensions, including the accused design.

obtained a separate patent for the withdrawn material, but even then it would not be covered by the *initial* patent).  Bach's "failure to prosecute the restricted embodiments resulted in the dedication of those disclosed embodiments to the public."  *Conmed Corp.*, 235 F. Supp. 2d at 122.

### B.    PCMW's Argument About The District Court's Supposed Inadequate Comparisons Is Irrelevant And Wrong

Leaving aside the doctrinal design-patent issues discussed above, PCMW asserts that the district court erred simply because it did not properly compare the '070 Patent drawings, the accused design, and the abandoned design.  According to PCMW, the court did not "examin[e] all of the features shown in the figures of the patented design," but instead "compar[ed] only one of the six figures of the patent to the accused design and one cancelled figure."  Br. 16.

PCMW's objection is irrelevant.  This is an appeal of a summary judgment order subject to de novo review.  This Court thus will necessarily conduct its own comparison of the relevant figures.  And for the reasons explained above, that review will demonstrate that Bach's narrowing amendment estops PCMW from asserting its infringement claim here.

PCMW's objection to the district court's comparisons is also wrong. PCMW's assertion that the district court did not "examine" all of the figures attached to the '070 Patent appears to be based exclusively on the court's failure to reproduce all six of the '070 Patent figures in its opinion, instead including only

32

Figure 1.  *See* JA 10-11.  The court stated, however, that it had compared "the

Defendants' accused design with the patented design and the canceled

embodiments," JA 10, and gave no indication that it limited its review of the file to

the drawings included in the opinion.  And the drawing featured in the district

court's opinion ("Figure 1") depicts the patented windshield design at such an

angle that all aspects are visible.  *See* JA 10.  The patented design is not one

applied, for example, to an opaque cube that might have distinct markings on the

back that would require examination of figures presenting additional views to

assess.  It is applied to a windshield made almost entirely of glass, and one whose

design features are readily captured in their entirety in the figure included in the

district court's opinion.  The court was not left to guess at what the other views

might reveal.  Thus, even if the district court had considered only Figure 1 in its

comparison, that figure would have nonetheless allowed the court to determine

whether the accused design, considered "as a whole," infringed the '070 Patent.

*Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir.

2002); *see also In re Rubenfield*, 270 F.2d at 395 ("It has been consistently held for

many years that it is the appearance of a design as a whole which is controlling in

determining questions of ... infringement.").  That determination would be based

on the size, shape, number, and placement of the venting holes, which were all

plainly visible in the figure reproduced.

Moreover, because a design is defined by the patent drawings, *see, e.g.*, *In re Owens*, 710 F.3d at 1366; *Crocs, Inc.*, 598 F.3d at 1302, the relevant cancelled design (the fifth design group identified by the patent examiner) was defined only by Figures 10 and 11 (Figure 10 shows two oval venting holes, Figure 11 shows two rectangular venting holes), which both depict the windshield design from the angle the district court undisputedly assessed.  JA 10-11, 369-70.

The district court conducted a reasoned comparison that evaluated the relevant designs as a whole, using figures that depicted the windshields from such an angle that they showed the entirety of the designs.  There was no error in the court's analysis of the patented, accused, and cancelled designs.

## III.    DEFENDANTS DID NOT WAIVE THEIR PROSECUTION HISTORY ESTOPPEL ARGUMENT

PCMW contends that defendants waived any type of prosecution history estoppel argument because it was not expressly pleaded as an affirmative defense in their answers to the complaint.  PCMW is wrong for two reasons.  First, prosecution history estoppel is not an affirmative defense that must be pleaded in the answer.  Second, even if it were, an affirmative defense may be the basis for judgment, even when not explicitly pleaded, so long as the plaintiff was given adequate notice that the defense would be asserted.

### A.    Prosecution History Estoppel Is Not An Affirmative Defense That Must Be Pleaded In A Defendant's Answer

No court has ever held that prosecution history estoppel is waived at trial because a party did not plead it specifically as an affirmative defense. To the contrary, every court to have recently considered the issue has concluded that "prosecution history estoppel is 'not an affirmative defense'" that must be pleaded in an answer. *Biolumix, Inc. v. Centrus Int'l, Inc.*, No. 08-11418, 2012 WL 6015896, at *11 (E.D. Mich. Dec. 3, 2012); *see MobileMedia Ideas, LLC v. Apple, Inc.*, No. 10-258, 2012 WL 6044777, at *48 (D. Del. Nov. 8, 2012); *Deep9 Corp. v. Barnes & Noble, Inc.*, 772 F. Supp. 2d 1349, 1351 (W.D. Wash. 2011); *Astrazeneca UK Ltd. v. Dr. Reddy's Labs. Ltd.*, No. 08-3237, 2010 WL 4721384, at *7 n.6 (D.N.J. Nov. 15, 2010); *PB Farradyne, Inc. v. Peterson*, No. 05-03447, 2006 WL 132182, at *4 (N.D. Cal. Jan. 17, 2006); *see also Network Caching Technology, LLC v. Novell, Inc.*, No. 01-2079, 2001 U.S. Dist. LEXIS 26211, at *8-9 (N.D. Cal. Dec. 31, 2001) (striking defendant's prosecution history estoppel defense without prejudice to re-plead if the factual allegations following plaintiff's infringement assertions support the defense).

Neither of the two cases from this Court cited by PCMW, Br. 35-36—*Yeu v. Kim*, No. 90-1070, 1990 WL 56140 (Fed. Cir. May 3, 1990); *Carman Industries, Inc. v. Wahl*, 724 F.2d 932 (Fed. Cir. 1983)—stands for the proposition that prosecution history estoppel must be pleaded in a defendant's answer with

specificity.  In each case, the Court merely held that a defendant could not raise prosecution history estoppel for the first time on appeal when the defendant had failed to raise it *at all* in the trial court.

In *Yeu*, the Court found that a defendant could not raise prosecution history estoppel for the first time on appeal after an 11-day trial in the district court where it had failed to raise the issue.  1990 WL 56140, at *1.  The Court then expressly reserved judgment on whether prosecution history estoppel is an affirmative defense under Fed. R. Civ. P. 8(c) that is waived if not pleaded in a defendant's answer.  *See Yeu*, 1990 WL 56140, at *2 (reaching its holding "[r]egardless of whether or not Rule 8(c) governs").

Similarly, in *Carman Industries*, the Court explained that because prosecution history estoppel was "not raised below," it could not be pressed for the first time on appeal.  724 F.2d at 942.  As the court in *Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*, No. 96-0942, 1996 WL 467273 (N.D. Cal. July 24, 1996), observed, the decision in *Carman Industries* includes "an off-hand reference to prosecution history estoppel as an affirmative defense," but that reference "was made in the context of finding that a party cannot raise the defense of prosecution history estoppel for the first time on appeal."  *Id.* at *4 n.4. Accordingly, *Carman Industries* "does not specifically authorize pleading prosecution history estoppel as an affirmative defense."  *Id.*

Since *Yeu* and *Carman Industries* were decided, this Court has applied prosecution history estoppel in situations where it was not specifically pleaded as an affirmative defense. *See, e.g.*, *MarcTec, LLC v. Johnson & Johnson*, 394 F. App'x 685, 687 (Fed. Cir. 2010) (finding "[p]rosecution history estoppel thus prevents MarcTec from recovering claim scope that includes bonding without the application of heat" where only pleaded affirmative defenses related to patent non-infringement and invalidity); *Spine Solutions*, 620 F.3d at 1317 (finding "prosecution history estoppel bars SSI from arguing that O-Maverick's two anchors are equivalent to the claimed 'single anchor,'" where only pleaded affirmative defenses were patent invalidity and patent non-infringement). Those decisions make clear that *Yeu* and *Carman Industries* do not establish any requirement that prosecution history estoppel be pleaded in a defendant's answer before it may be considered by the district court.

The foregoing analysis suffices to establish that there was no waiver under this Court's precedents. The district court relied on Eleventh Circuit precedents to reach the same result. Because the result is the same either way, PCMW's argument that regional precedents do not govern this question, Br. 36-38, is beside the point. And it is wrong in any event.

"Regional circuit law governs the question of waiver of a defense." *Ultra-Precision Mfg.*, 411 F.3d at 1376; *see Riverwood Int'l Corp. v. R.A. Jones & Co.*,

324 F.3d 1346, 1352 (Fed. Cir. 2003).  PCMW seeks to escape that rule here on the ground that the Patent Act requires non-infringement to be pleaded, Br. 37, and because prosecution history estoppel is a concept unique to patent law, Br. 37-38. Both of these arguments miss the mark.  The relevant inquiry is whether the issue is unique to patent law.  *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1561 & n.4 (Fed. Cir. 1994); *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574-75 (Fed. Cir. 1984).  The waiver of an alleged affirmative defense is hardly unique to patent law.  Whether an affirmative defense must be pleaded in a defendant's answer is a basic question of pleading standards under the Federal Rules of Civil Procedure and has nothing to do with the intricacies of patent law.  *See Riverwood*, 324 F.3d at 1352 (applying Eleventh Circuit law to decide "whether Riverwood waived the issue of whether the '806 patent was prior art to the '789 and '361 patents" ).

The case cited by PCMW, *Bradford Co. v. Jefferson Smurfit Corp.*, No. 2000-1511, 2001 WL 35738792 (Fed. Cir. Oct. 31, 2001), is not to the contrary. That case did not concern an affirmative defense under Rule 8(c).  It addressed a statutory limitation on damages under the Patent Act.  *See id.* at *9 (because 35 U.S.C. § 286 was not an affirmative defense, Rule 8(c) did not apply).  The Patent Act nowhere mentions the doctrine of waiver.  Accordingly, the law of the regional circuit applies.

38

**B.**     **Even If Prosecution History Estoppel Were An Affirmative Defense, It Was Properly Preserved, And The District Court's Grant Of Summary Judgment Was Proper**

Even if prosecution history estoppel were an affirmative defense, the district court did not err in relying on the doctrine here, because an affirmative defense is waived only if there is a showing of prejudice, and PCMW can make no such showing here.

Under Eleventh Circuit law, affirmative defenses raised before trial are not waived absent a showing of prejudice. *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1222 (11th Cir. 2012); *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797-98 (11th Cir. 1989); *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988). These same cases establish that there is no prejudice so long as the plaintiff is given notice of the defense before trial by some means other than the answer. *See Pensacola Motor Sales*, 684 F.3d at 1222 (affirmative defense raised for first time in summary judgment motion); *Grant*, 885 F.2d at 798 (same); *Hassan*, 842 F.2d at 263 (notice of affirmative defense provided through discovery). Federal Circuit precedents are to the same effect. *See, e.g., Caldera v. Northrop Worldwide Aircraft Servs., Inc.*, 192 F.3d 962 (Fed. Cir. 1999) (citing and following cases stating that defense of collateral estoppel is not waived absent prejudice); *see also Santiago v. United States*, 107 Fed. Cl. 154, 159 (Fed. Cl. 2012) (citing Federal Circuit's predecessor court for rule that "a court may allow a

non-plead[ed] affirmative defense to be raised if it would not result in prejudice to the party").

Because defendants raised prosecution history estoppel in their pleadings, expert reports, discovery requests, and summary judgment motion, PCMW was not prejudiced, and defendants did not waive the defense.[4]

Defendants' answers explicitly raised issues and defenses that gave PCMW notice that prosecution history estoppel would be an issue in the case. For example, defendants specifically pleaded non-infringement. *See* JA 181, 191, 201, 211, 227. Prosecution history estoppel is a defense that the accused device did not infringe because the patentee had surrendered that subject matter to the public. Defendants also pleaded forfeiture and abandonment as affirmative defenses. *See* JA 213, 229. Prosecution history estoppel and abandonment are essentially the same issue. *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951-52 (Fed. Cir. 1993) ("The essence of prosecution history estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents, coverage of subject matter that was relinquished during prosecution to procure issuance of the patent."). Likewise, defendants asserted the affirmative defense of "estoppel." JA 181, 191, 201, 212, 228.

---

[4] In *Yeu* and *Carman Industries*, the defendants did not raise prosecution history estoppel in the trial court at all.

The case, of course, did not stop with the initial pleadings, and as matters developed, defendants even more explicitly raised the specific issue of prosecution history estoppel in their expert reports, discovery requests, and motion for summary judgment.  For example, in an April 9, 2012 expert report, defendants' invalidity and non-infringement expert, Fred Smith, discussed the concept of prosecution history estoppel.  *See* JA 656-57.  He relied on the '070 Patent's prosecution history and Bach's cancellation of the alternative windshield embodiments as part of his invalidity opinion.  *See* JA 700-01.  In his May 7, 2012 rebuttal report, Mr. Smith recited this prosecution history again, and he expressly asserted prosecution history estoppel as one basis for his non-infringement opinion.  *See* JA 797-98.

Defendants also propounded discovery directed specifically to prosecution history estoppel on April 13, 2012.  *See* JA 822 (RFA 6: "Admit that Bach abandoned all embodiments of his claimed design that depicted rectangular holes in a corner post during prosecution of the '070 patent"; RFA 7: "Admit that Bach abandoned all embodiments of his claimed design that depicted three total holes in each corner post during prosecution of the '070 patent"; RFA 9: "Admit that Bach abandoned all continuations of the '070 patent").  PCMW responded to these requests without asserting any relevance or waiver objections.  *See* JA 847-48.

41

Finally, defendants addressed the issue of prosecution history estoppel at length in their June 7, 2012 summary judgment motion.  *See* JA 238-67.  Section IV of that brief bears the heading "Prosecution History Estoppel Limits The Scope of the '070 Patent and Thus the Accused Windshield Does Not Infringe," and defendants devoted more than four pages to this argument.  *See* JA 252-56.  When defendants filed their Consolidated Motion for Summary Judgment on July 20, 2012, they simply re-stated the prosecution history estoppel argument made in their June 7, 2012 motion for summary judgment.  *See* JA 285-89.  And defendants made a similar argument (this time framed as prosecution disclaimer) in their brief filed on July 27, 2012 in support of their Motion For Claim Construction as to Patent Claims.  JA 348-54.  In its August 13, 2012 Opposition, PCMW did not assert waiver.  *See* JA 427-54.

As the authorities discussed above establish, the omission of an affirmative defense from the answer does not prejudice the plaintiff—and hence does not waive the defense—where the plaintiff was otherwise given notice during the pre-trial period that the defendant would pursue the defense.  *See supra* at 39-40.  Defendants here asserted prosecution history estoppel in their expert reports, discovery, and summary judgment briefing.  PCMW thus suffered no prejudice, and the defense was not waived (even assuming it is affirmative defense that ordinarily must be pleaded).  Tellingly, PCMW does not even suggest in its brief

42

that it was prejudiced by the timing or content of defendants' prosecution history estoppel argument. By failing to raise its own prejudice, PCMW itself has now waived the issue. *See, e.g.*, *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 n.4 (11th Cir. 2008) ("[The Eleventh Circuit] has consistently held that issues not raised on appeal are abandoned."); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("[Federal Circuit] law is well established that arguments not raised in the opening brief are waived.").

Instead of attempting to establish prejudice, PCMW contends that there is waiver here because the trial court entered a scheduling order concerning the deadlines for amending pleadings. Br. 40-43. Given that order, PCMW argues that that under *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417 (11th Cir. 1998), defendants were required to satisfy Fed. R. Civ. P. 16's "good cause" requirement for amendment of a pleading to assert a new affirmative defense. That argument fails for at least two reasons.

First, *Sosa* involved a plaintiff's motion to amend its complaint after the scheduling order deadline for amending pleadings. Defendants here never sought to amend their pleadings, nor did they need to. Even if prosecution history estoppel were an affirmative defense (which it is not), and even if defendants failed to raise it in their answer (which they did not), defendants would not need to amend their answer because affirmative defenses are preserved so long as they are

43

disclosed before trial by any means, including—as here—by discovery, expert reports, and summary judgment briefing.  *See Pensacola Motor Sales*, 684 F.3d at 1222; *Grant*, 885 F.2d at 798; *Hassan*, 842 F.2d at 263.

Second, and in any event, the controlling scheduling order here did *not* include any deadlines for the amendment of pleadings.  The scheduling order PCMW cites, Br. 42 n.8 (citing JA 123), was superseded by the February 21, 2012 Scheduling Order, JA 236-37.  That order set forth the relevant deadlines for the case, *see* JA 236 ("The case will be governed by the following schedule."), and contained no deadline for amending the pleadings.

## CONCLUSION

When a patentee surrenders subject matter to the public in the course of prosecuting a patent, the doctrine of prosecution history estoppel prevents him from seeking to regain through litigation what he has abandoned.  Bach amended the '070 Patent application to delete various design groups, including, critically, a marine windshield with a hatch and two rectangular venting holes.  Having dedicated that subject matter to the public, PCMW is estopped from claiming that defendants' accused design infringes the '070 Patent.  Accordingly, the district court's order granting summary judgment of non-infringement should be affirmed.

Dated:  June 24, 2013                    Respectfully submitted,

                                           /s/ Jonathan D. Hacker

                                           JONATHAN D. HACKER
                                           LOREN L. ALIKHAN
                                           DEANNA M. RICE
                                           O'Melveny & Myers LLP
                                           1625 Eye St. N.W.
                                           Washington, D.C. 20006
                                           Telephone: (202) 383-5300

                                           BRIAN BERLINER
                                           STEVEN BASILEO
                                         O'Melveny & Myers LLP
                                         400 South Hope St., 18th Floor
                                         Los Angeles, CA 90071
                                         Telephone: (213) 430-6000

                                         DARIN W. SNYDER
                                         O'Melveny & Myers LLP
                                         Two Embarcadero Center, 28th Floor
                                         San Francisco, CA 94111
                                         Telephone: (415) 984-8700

                                         *Counsel for Appellees Malibu Boats, LLC and Tressmark, Inc.*

                                         MARK P. WALTERS
                                         DARIO A. MACHLEIDT
                                         Frommer Lawrence & Haug, LLP
                                         1191 Second Avenue, Suite 2000
                                         Seattle, WA 98101
                                         Telephone: (206) 336-5690

                                         *Counsel for Appellees Marine Hardware, Inc., MH Window, LLC, and John F. Pugh*

45

# CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system.  Participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Jonathan D. Hacker
JONATHAN D. HACKER
O'Melveny & Myers LLP
1625 Eye St. N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,188 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and Fed. Cir. R. 32(b).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated:  June 24, 2013

/s/ Jonathan D. Hacker
JONATHAN D. HACKER
O'Melveny & Myers LLP
1625 Eye St. N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300